UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHOON RHEY,<br><br>        Plaintiff,<br><br>   v.<br><br>G. MURPHY, et al.,<br><br>        Defendants. | Case No. 16-cv-07237-JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 129 |

Now before the Court is the motion for summary judgment filed by remaining defendants, B. Dutton and B. Haub ("Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 20, 2022, is HEREBY VACATED. The Court GRANTS Defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff is a California prisoner who filed this civil rights case pursuant to 42 U.S.C. section 1983. He claims that Defendants, officials at San Quentin State Prison where Plaintiff was formerly housed, and at the California Department of Corrections and Rehabilitation ("CDCR"), were deliberately indifferent to his health and safety. The only claims remaining after a series of motions is the Eighth Amendment claims against Officers Dutton and Haub for their role in attempting to assign Plaintiff a cellmate and for issuing a disciplinary citation for Plaintiff's refusal to accept a cellmate.

1    Plaintiff is a 63-year-old man who has served over 26 years of his life sentence. During
2    his confinement with the CDCR, Plaintiff developed severe sleep apnea, characterized by loud
3    snoring, nighttime choking, interrupted sleep, and difficulty breathing. (Dkt. No. 131-1,
4    Declaration of Choon Rhey ("Rhey Decl.") at ¶ 2.) To treat this condition, Plaintiff underwent
5    surgery, but it was not effective at remedying the issue. Plaintiff later received a continuous
6    positive airway pressure (CPAP) machine. (*Id.* at ¶ 3.) The CPAP machine is not entirely
7    ineffective and sometimes malfunctions, resulting in continued snoring and choking by Plaintiff
8    when he sleeps. (*Id.*) Plaintiff is also physically impaired, including suffering from arthritis in his
9    foot, a degenerative disc disease, a history of ankle fractures, a history of peptic ulcer disease, and
10   knee pain. (*Id.* at ¶ 5.)

11   Plaintiff contends that his sleep apnea and health problems have made him a target for
12   violence from past cellmates. Cellmates have complained about his loud snoring and choking as
13   well as the noise made by the CPAP machine and the presence of the machine in the cell. (*Id.* at ¶
14   4.) Over the course of the years 2011 through 2013, more than 20 cellmates had been in and out
15   of Plaintiff's cell. (*Id.*) Plaintiff alleges that the victimization and violence subsided when he was
16   placed in a cell by himself.

17   Prison regulations require that inmates double-cell absent factors that specifically preclude
18   it. Plaintiff claimed to be entitled to single-cell status, however that claim had been recently
19   considered by a classification committee and the denial was affirmed by three levels of
20   administrative appeals prior to the attempt to place Plaintiff in a shared cell. Members of the
21   committee and appeal reviewers found that the case factors presented by Plaintiff did not qualify
22   him for a single cell. The decision on the final administrative appeal was a denial of Plaintiff's
23   request for single cell status. (Dkt. No. 129-1, Declaration of J. Barba ("Barbra Decl.") at ¶¶ 4, 5.)

24   On August 10, 2016, when Plaintiff was advised that he was going to be assigned a
25   cellmate, he told the desk staff in his housing unit that he refused the cellmate. (Dkt. No. 129-2,
26   Declaration of B. Dutton ("Dutton Decl.") at ¶ 4; Dkt. No. 129-3, Declaration of D. Baker ("Baker
27   Decl.") at ¶ 2, Ex. A.) Plaintiff was advised that he did not at that time have single-cell status and
28   that therefore he could not refuse a cellmate. (Dutton Decl., ¶ 5; Baker Decl., ¶ 3, Ex. A.) When

1  Plaintiff continued to refuse to accept a cellmate, the assigned inmate was housed elsewhere, and
2  Plaintiff continued in his cell alone. (Dutton Decl., ¶ 8; Baker Decl., ¶¶ 2, 3, 5, Ex. A.) The
3  officers present at the time wrote up the premise of the citation for disciplinary action, and the
4  correctional officer, D. Baker, issued the citation. (Dutton Decl., ¶ 7; Baker Decl., ¶ 4, Ex. A.)

On August 30, 2016, Plaintiff was afforded a hearing regarding the disciplinary citation he had been issued. (Dkt. No. 129-4, Declaration of B. Haub ("Haub Decl.") at ¶¶ 2-3, 5-7, Ex. A.) Based upon the evidence submitted and Plaintiff's own testimony, Plaintiff was found guilty of violating prison rules by refusing a cellmate without a single-cell status. (*Id*., ¶¶ 5-8, Ex. A.)

At that time, Plaintiff was still not required to cell with another inmate. He continued to occupy his cell alone until he was moved to another housing unit on November 16, 2016. (Barba Decl., ¶ 6; Dutton Decl., ¶ 8.)

The Court shall address other relevant facts as necessary in the remainder of its order.

## ANALYSIS

**A.     Standard of Review.**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id*.

At summary judgment, the judge must view the evidence in the light most favorable to the

3

nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

**B.    Eighth Amendment Claim.**

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." *Id.* Neither negligence nor gross negligence will constitute deliberate indifference. *Id.* at 835-37 & n.4. Deliberate indifference is the same standard as criminal recklessness, *i.e.*, the prison official knows of and disregards an excessive risk to inmate health or safety. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id.* at 842.

In this case, Plaintiff alleges that Defendants Dutton and Haub violated his Eighth Amendment rights by requiring him to double-cell and thus endangering his safety. Plaintiff alleges that he was subjected to multiple and severe attacks by cellmates in the past as a result of his trouble sleeping, the presence of the CPAP machine, and his physical disabilities which prevented him from defending himself. However, after conducting an investigation of his claims before the classification committee as well as three levels of administrative review, the defendant officers reasonably relied upon the evaluation and ultimate finding that Plaintiff was suitable to be double-celled. (Barba Decl., ¶¶ 3-5, Ex. B; Haub Decl., ¶¶ 5-7, Ex. A; Dkt. No. 129-5, Declaration of M. Bell ("Bell Decl.") at ¶ 5, Ex. A; Dkt. No. 129-6, Declaration of J. Flores at ¶ 8, Ex. A.)

In addition, at the time of Plaintiff refusing to double-cell, the two remaining defendants did not actually require Plaintiff to cell with another inmate. (Barba Decl., ¶ 6; Dutton Decl., ¶ 8.)

4

Instead, they scheduled a hearing at which Plaintiff could address his safety concerns and present his own evidence for consideration. (Haub Decl, ¶¶ 2-3, 5-7, Ex. A.) According to the records of the hearing, Plaintiff expressed that he did not have specific safety concerns in the housing unit and he refused to be housed in another special unit out of fear for his safety. (*Id.*)

After Plaintiff's refusal to admit another inmate to his cell, Defendants properly wrote up the incident and presented the disciplinary citation to the committee for review. The disciplinary proceeding was in compliance with the California Code of Regulations which provides that if "an inmate refuses to be housed as determined to be appropriate to this section, the inmate shall be subject to the disciplinary process." 15 C.C.R. § 3269(g). The refusal of a cellmate, even if premised upon legitimate concerns, is grounds for a disciplinary hearing to review and evaluation of the reasons for the refusal. In this case, the hearing was conducted before the classification committee who determined that Plaintiff was not cleared for single-cell status. This determination was affirmed by a panel of administrative appeals reviewers and a deputy director for correctional health care. (Barba Decl., ¶ 3, Ex. B; Bell Decl., ¶ 5, Ex. A.) Having properly engaged the classification committee for their determination and processed the decision through the administrative review system, the defendant officers were entitled to reasonably rely on these determinations. The Court finds they were not deliberately indifferent to Plaintiff's safety while performing their duties.

Defendant Dutton was on duty on August 10, 2016, when Plaintiff approached the staff desk and refused to accept an assigned cellmate. (Dutton Decl., ¶¶ 3-7; Baker Decl., ¶¶ 2-4, Ex. A.) Officer Dutton informed Plaintiff that he did not have single-cell status at which time Plaintiff requested to speak with the lieutenant on duty, Officer Baker. (*Id.*) Officer Baker confirmed that Plaintiff did not qualify as single-cell status and that his refusal to allow a cellmate would result in disciplinary proceedings. (*Id.*) When Plaintiff still refused a cellmate, Officer Baker issued a disciplinary rules violation report ("RVR") and Officer Dutton supervised and approved that the form was properly filled out. (*Id.*; *see also* First Amended Complaint at ¶ 49.)

No Section 1983 liability attaches for personnel who are merely reviewing tasks performed by others. *See Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (holding that supervisor

1  whose role was administrative and limited to reviewing the actions of others was not subject to
2  Section 1983 liability). Furthermore, to the extent Officer Dutton participated in the response to
3  Plaintiff's refusal to room with another inmate, his response – to issue the RVR and arrange a
4  hearing at which Plaintiff could thoroughly present his safety concerns – does not constitute an act
5  of deliberate indifference to Plaintiff's safety needs. *See Farmer*, 511 U.S. at 847 (attaching
6  liability to prison official where that official "knows that inmates face a substantial risk of serious
7  harm and disregards that risk by failing to take reasonable measures to abate it."). The Court finds
8  that, to the extent Plaintiff believed that double-celling would cause him danger, Officer Dutton's
9  response by issuing a disciplinary citation and arranging an administrative hearing designed to
10 address the safety concerns cannot reasonably amount to deliberate indifference to Plaintiff's
11 safety.

12 Defendant Haub conducted the administrative hearing in which he allowed Plaintiff to
13 present his position and evidence regarding his own safety. (Haub Decl., ¶¶ 2-7, Ex. A.) The
14 committee found that Plaintiff's arguments for single-cell status were not persuasive and did not
15 grant his request for designation of the status. (*Id.* at ¶¶ 5-6, Ex. A; Barba Decl., ¶ 3, Ex. B.) The
16 mere fact that, after consideration of all the evidence presented, Office Haub and the reviewing
17 committee did not grant Plaintiff's request does not indicate that the officer was deliberately
18 indifferent to Plaintiff's safety. In addition to the committee's review of prior determinations that
19 Plaintiff was not entitled to single-cell status, Officer Haub also questioned Plaintiff specifically
20 about his safety concerns and offered him special housing for inmates with safety concerns.
21 (Haub Decl., ¶ 7, Ex. A.) Plaintiff rejected the offer and also indicated that he was not concerned
22 for his safety with regard to anyone in his current housing unit. (*Id.*) The conduct of holding an
23 administrative proceeding, gathering evidence, and adjudicating Plaintiff's status does not amount
24 to deliberate indifference by Officer Haub.

25 Accordingly, the Court finds that neither officer acted with deliberate indifference of
26 Plaintiff's safety in violation of his constitutional rights. Defendants are entitled to summary
27 judgment on this basis.
28

## C. Qualified Immunity.

Defendants also move for summary judgment on the basis that they are entitled to qualified immunity. Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). A claim for qualified immunity requires the court to evaluate the defense using a two-step inquiry in *Saucier v. Katz*, 533 U.S. 194 (2001). The first step is to determine whether, given the undisputed facts, the official violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the second step of *Saucier*, the issue is whether the allegedly violated constitutional rights was "clearly established" in the specific factual context confronting the officers. *See Saucier*, 533 U.S. at 202. "If an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002). Courts may choose which prong of this analysis to address first. *See Pearson*, 555 U.S. at 236-39.

As to the first element, the Court has found there was no constitutional violation as the defendant officers were not deliberately indifferent to Plaintiff's safety concerns. Even assuming the Court had found a constitutional infraction, the court must then determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Qualified immunity attaches where the constitutional questions of whether the defendants' actions were lawful is "not beyond debate." *Mullinex v. Luna*, 577 U.S. 7, 12 (2015). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis in original). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal citation omitted). When reasonable officials in the same position could have reasonably believed that their conduct complied with the law, qualified immunity affords them protection. *Pearson*, 555 U.S. at 224.

There was no legal authority existing at the time of the incident on August 10, 2016, which required that the officers agree with Plaintiff's assessment that he was entitled to single-cell status.

7

1  The disciplinary citation and administrative hearing were designed to enable the officers to take
2  reasonable steps to abate or mitigate the risk perceived by Plaintiff when required to double-cell.
3  Not only did the officers perform an investigation and conduct a hearing to consider Plaintiff's
4  evidence and offer him a cell in special housing for inmates with safety concerns, but they also
5  allowed Plaintiff to remain without a cellmate in the same housing unit. The law was not clearly
6  established that issuing a disciplinary citation, conducting an investigation and administrative
7  hearing, and then permitting Plaintiff to remain in the same housing unit without a cellmate would
8  violate Plaintiff's constitutional rights. Accordingly, Officers Dutton and Haub are entitled to
9  qualified immunity and Defendants are entitled to summary judgment on this basis as well.

## CONCLUSION

For the reasons explained above, the Court GRANTS Officers Dutton and Haub's motion for summary judgment. As the Court has previously dismissed the other Defendants in this action, the Court shall issue a separate judgment and the Clerk is instructed to close the matter.

**IT IS SO ORDERED.**

Dated: May 16, 2022

_____
JEFFREY S. WHITE
United States District Judge